# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

NANCY ALBERT,

    Plaintiff

v.

PALM BEACH COUNTY BOARD OF COUNTY COMMISSIONERS,

    Defendant.

Case No.:

## COMPLAINT

Plaintiff, NANCY ALBERT ("Albert" or "Plaintiff"), by and through her undersigned counsel, hereby files this Complaint for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq ("Title VII") and the Florida Civil Rights Act of 1992, Section 760.01, et seq.. ("FCRA") against Defendant, PALM BEACH COUNTY BOARD OF COUNTY COMMISSIONERS (the "County or "Defendant") and as grounds therefore states as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Nancy Albert is a resident of Broward County Florida, within this District, and is otherwise sui generis. Plaintiff was employed by the County as the Director of the County's Electronic Services and Security ("ESS") Division until she was improperly and illegally terminated on September 20, 2019 because of her sex and in retaliation for her repeated complaints about her supervisor's discriminatory, pervasive, hostile and unethical conduct, as alleged herein.

2. Defendant Palm Beach County Board of County Commissioners is a legislative and administrative body of the Palm Beach County government. The County is a "person" and

"employer" as defined by the Florida Civil Rights Act of 1992, Fla Stat. 760.02 ("FCRA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C 2000e, et seq ("Title VII"), because it is a governmental agency that employs fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

3.  At all material times, Plaintiff was an "employee" of the County until her unlawful, discriminatory and retaliatory termination in September 2019.

4.  Plaintiff is a female and within a class of persons protected from workplace discrimination by Title VII and the FCRA.

5.  This Court has original jurisdiction in this action pursuant to 28 U.S.C. Sections 1331 and 1343 and 42 U.S.C. Section 2000e-5, inasmuch as the matter in controversy is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq. This District possesses venue of this matter pursuant to 42 U.S.C. Section 2000e-5(f). The jurisdiction of this Court is invoked to secure protection and redress deprivation of rights guaranteed by federal law, which rights provide for injunctive relief and other relief for illegal employment discrimination. The amount in controversy in this action exceeds the jurisdictional limits of this Court.

6.  On December 13, 2019, Plaintiff dual filed a charge of discrimination with the Equal Employment Opportunity Commission and the Florida and the Palm Beach County Office of Equal Opportunity which maintains a work sharing agreements with the EEOC, asserting discrimination and retaliation claims on the basis of Plaintiff's sex. *See* Exhibit "A."  On February 4, 2021, the EEOC issued Plaintiff a Notice of Dismissal and Right to Sue.

7.  All conditions precedent to the filing of this action before this Court have been previously satisfied, including the exhaustion of all administrative procedures required by the applicable statutes.

## GENERAL ALLEGATIONS

8. Plaintiff was employed by the Defendant in its Facilities Development & Operations Department ("FDO") as the Director of Electronic Services and Security Division ("ESS") from 2011 to September 2019.

9. Prior to serving as Director of ESS, Plaintiff worked for six years as a Space and Interior Planner with the FDO.

10. Throughout her employment with Defendant, Plaintiff received exemplary acknowledgements of her performance through recommendation letters, newspaper articles, and commendatory emails from other departments and constitutionals. Moreover, under Plaintiff's direction, the ESS regularly exceeded the County's performance expectations even though it typically operated with a limited staff.

11. As ESS Director, Plaintiff reported directly to James Beno ("Beno"), FDO's Director of Operations and Audrey Wolf ("Wolf"), Director of FDO. Plaintiff had no issues with Beno or Wolf prior to becoming the Director of ESS.

12. However, after becoming ESS Director, Plaintiff learned that in addition to serving as the FDO Director of Operations, Beno also served as the President of Baseball Operations for Elite Squad Baseball, a competitive baseball league for teenagers in Palm Beach County.

13. In furtherance of his personal endeavor, Beno regularly enlisted the assistance of male FDO staff, including Plaintiff's subordinates like Jason Davis ("Davis") to serve as coaches and assistant coaches for the Elite Squad Baseball League. These male employees were permitted and/or directed by Beno to use work time to run personal errands for the Elite Squad Baseball League. Moreover, Beno allowed other male ESS subordinates, including Gilbert Morales

("Morales") to run personal errands or otherwise disappear with Beno during work hours at Plaintiff's detriment.

14. Beno also regularly held meetings and performed work for Elite Squad Baseball from the FDO offices during the workday and had Davis and other FDO and ESS employees do the same.

15. Beno continued to repeatedly make special exceptions for FDO male personnel so that they could assist with his baseball league, or run other personal errands on work time throughout Plaintiff's time as ESS Director, from 2011 all the way through Plaintiff's termination in September 2019.

16. In 2012, an effort to streamline her division, Plaintiff identified a potential problem with the night shift of the Palm Tran Unit and recommended that the Unit be placed under a different section that oversaw the same technologies. At the time, Davis, was serving as the manager of another operations section within ESS and due to his success with that Section which had similar shortfalls, the Plaintiff felt it was in the best interest of the Division to put the Palm Tran Unit under his purview.

17. When Plaintiff presented her recommendation to Beno, Beno immediately rejected it and angrily rejected Plaintiff's recommendation, stating do "not mess with my baseball schedule." As Beno explained, Davis as a coach in Beno's baseball league, needed to be able to leave early which meant that Davis could not work with the night shift.

18. When Plaintiff voiced her objections to Beno's conduct, and how he was encouraging and empowering ESS staff to be disrespectful and freely express animosity towards the Plaintiff in addition to the Plaintiff complaining to Beno that work wasn't being completed timely, sensitive deadlines were being missed and customer complaints were being lodged because

of Beno's special exceptions – particularly with respect to ESS employees that were her subordinates – Beno would only get angry and would repeatedly tell Plaintiff "all ESS staff works for him and he can do what he wants with his staff" and dismiss Plaintiff's concerns.

19. Moreover, despite Beno's misappropriation of ESS personnel and resources to support his baseball league, Beno threatened Plaintiff that he would still "hold [Plaintiff] accountable for anything that goes wrong in [my] division" and "if [Plaintiff] didn't like the quality of work or the time frame in which it was being done by staff, [she] should do it [herself.]" As a result, Plaintiff was regularly left to work extra hours to pick up the slack of staff that were otherwise detained for personal errands for Beno.

20. Because of Plaintiff's complaints and objections, Beno began to single out Plaintiff, repeatedly disparaging her to Plaintiff's subordinates and other male employees at FDO and on at least one occasion, telling Plaintiff's subordinates that he wanted to get her terminated.

21. Moreover, Beno also began to skip or blow off regularly scheduled biweekly meetings with Plaintiff, telling the Department Administrative Secretary and anyone else who would listen that he didn't care if he ever met with Plaintiff again. Beno did not take such actions, or inactions, with any other male division directors in FDO.

22. For instance, Beno would yell at Plaintiff in front of other FDO employees or so loudly that Plaintiff would overhear, telling her that she was a bad manager, that everyone hated her and that employees were quitting because of her. None of these statements were true.

23. On more than one instance, the threats and intimidation by Beno was so extreme that Plaintiff became visibly upset and needed to be helped out of the office by other staff so that she could compose herself.

24. Next, throughout the relevant time period, Beno refused to accept any recommendations from Plaintiff that were provided by her in the normal course of her duties as the ESS Director unless those recommendations were validating by her staff, including Davis, the ESS Assistant Director, and Morales, manager of Security & Access (overseen by ESS).

25. At one point, in July 2015, Beno reprimanded Plaintiff by prohibiting her from working from FDO's offices for three months because of complaints he had purportedly received from "50%" of Plaintiff's staff regarding her management ability.

26. Beno unilaterally claimed that he himself had conducted an investigation into the complaints and determined them to be accurate. Without sharing any of the facts or details surrounding these purported complaints, Plaintiff was forced to work out of FDO's satellite office in Delray Beach.

27. Only after three months, when Plaintiff was permitted to return to the FDO office did Beno admit that that he had misrepresented that "50%" of Plaintiff's staff had complained. In reality, Beno's actions were based on an unsubstantiated complaint from just two individuals with close personal ties to Beno. Moreover, another purported complainants cited by Beno, including Mark Filla, denied ever making a complaint and stated he was unaware that his name had been implicated by Beno's ostensible investigation.

28. In response to Beno's conduct, Plaintiff repeatedly complained to Beno himself, Wolf and also to Wayne Condry, Defendant's Director of Human Resources.

29. On October 31, 2018, Plaintiff met with Wolf and Condry. During that meeting Plaintiff stated that she believed Beno was trying to fire her so that other male FDO employees could be promoted to ESS Director; that Beno was tormenting Plaintiff and making thinly veiled inuendos about Beno's power to fire Plaintiff.

30. In this meeting, Plaintiff reported Beno's continued abuse and misappropriation of department resources to conduct activities on behalf of his business and personal needs. The Plaintiff also provided Wolf and Condry with detailed information of unfounded rumors and discriminatory accusations that Beno was disseminating about Plaintiff to her subordinates as well as specific examples of how Beno had treated her less favorably than his other, mostly male, division directors at the same level as Plaintiff.

31. During this meeting, Wolf also admitted that she had not seen any complaints or results related to Beno's purported investigation that led to Plaintiff's three-month ban from the FDO office.

32. Plaintiff therefore asked for her division to be moved out from under Beno's supervision because the level of stress and anxiety was taking a toll on Plaintiff. However, Plaintiff's complaints and request were again ignored.

33. On or about February 2019, Beno again went off on a tirade about Plaintiff to another one of Plaintiff's subordinates, Bennie Dandy, the ESS Security Manager who was a direct report under Plaintiff. Although Dandy told Beno that he didn't want to be put in the middle of any disputes between Plaintiff and Beno, Plaintiff proceeded to disparage and demean Plaintiff to Dandy while in the lobby of the FDO Administration building.

34. Each disparaging and harassing action by Beno caused Plaintiff emotional distress, anxiety and mental anguish.

35. On September 13, 2019, Plaintiff, Wolf, Beno, Isami Ayala Collazo ("Ayala-Collazo"), the FDO Assistant Director at the time, and Bob Marks, a subordinate of Plaintiff's held a meeting to discuss Marks' interest in the open Assistant Director of ESS position.

36. Prior to the meeting, Plaintiff had recommended three County employees as viable candidates for the ESS Assistant Director position. Mr. Marks was one of those candidates. But after the meeting on September 13, 2019, Plaintiff wrote to Wolf and explained that she would accept and work with whomever was appointed to the open position.

37. Despite this, during the meeting, Beno again made unwarranted and derogatory statements about Plaintiff in front of Plaintiff's subordinates, stating that no one liked her and that she was a bad manager. He further stated that she was the reason everyone was leaving FDO.

38. Beno's statements were not true.

39. Plaintiff responded incredulously, surprised that such statements were made in front of Plaintiff's subordinates and further complained that Beno had created a "good ol' boy network" in the office that excluded Plaintiff and caused Beno and others to treat Plaintiff, a female, differently than the other male employees in the office, particularly the other male directors.

40. Although both Ayala-Collazo and Wolf agreed with Plaintiff's assessment during the meeting, nothing was done to address the problems brought up, again, by Plaintiff.

41. Following this meeting, on September 20, 2019, Wolf, Ayala-Collazo, and Beno scheduled a meeting with Plaintiff at which Plaintiff was presented with a letter informing her that Plaintiff's employment had been terminated because of her purportedly "demeaning attitude, condescending tone, micromanagement/control and harassment" which Wolf claimed were "recurring issues."

42. Again, Plaintiff renewed her request for copies of any and all complaints lodged against her to that would substantiate the letter's claims of recurring issues, but no such complaints were ever provided.

43. The reason for this is simple, Plaintiff's personnel file is devoid of any such complaints.

44. The letter further suggested that Plaintiff's termination was based on "feared retaliation" however, the documents attached to Wolf's letter make clear that Plaintiff never retaliated, wrongfully or otherwise, against any employee.

45. As a result, Plaintiff believes that the reasons for her termination stated in the Wolf letter are pretext and that Plaintiff was wrongfully terminated because of her sex and because she opposed Defendant's discriminatory and hostile practices.

**COUNT I**[AN1][KR2]
**SEX BASED EMPLOYMENT DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**42 U.S.C. 2000e**

46. Plaintiff realleges and incorporates herein as if set forth in full, the factual allegations in paragraphs 1 through 45 as if fully set forth herein.

47. Plaintiff is a female and a member of a protected class under Title VII.

48. By the conduct described above, Defendant discriminated against Plaintiff because of her gender and subjected Plaintiff to sex-based animosity by her supervisor and other male employees that she worked with.

49. Such discrimination was based upon Plaintiff's gender in that Plaintiff would not have been the subject of such discriminatory conduct but for the fact that Plaintiff was a woman.

50. Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights. Defendant and its supervisory personnel, including Audrey Wolf and Wayne Condry, were aware that discrimination on the basis of Plaintiff's sex was unlawful and ongoing but intentional and/or recklessly disregarded Defendant's violations of law.

51. Plaintiff, because of her sex, was regularly treated less favorably by Defendants than similarly situated male employees including when Beno publicly made disparaging remarks about Plaintiff in front of FDO staff and when Plaintiff was terminated because of her sex.

52. Defendant's stated reasons for Plaintiff's termination were false pretext.

53. At all material times, the employees exhibiting discriminatory conduct, namely James Beno and Audrey Wolf, possessed the authority to affect the terms, conditions and privileges of Plaintiff's employment with Defendant.

54. Defendant retained all employees who exhibited discriminatory conduct toward the Plaintiff and did so despite the knowledge of said employees engaging in discriminatory actions.

55. The actions of the Defendant and/or its employees were willful, wanton and intentional and with malice or reckless indifference to the Plaintiff's stuatorily protected rights under Title VII, thus entitling Plaintiff to damages in the form of compensatory and punitive damages.

56. Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless the relief requested herein is granted.

**WHEREFORE**, Plaintiff, Nancy Albert, demands judgment against the Defendant, in an amount which will compensate her for:

a. Violation of her rights under Title VII of the Civil Rights Act of 1964 for Defendant's discriminatory conduct, including the wrongful termination of Plaintiff based on her sex.

b. Compensatory damages including lost wages, past and future and/or impairment of power to earn money; physical pain, emotional distress and humiliation, past and future; and past and future medical expenses;

    c. Punitive damages to punish the Defendant for its willful, wanton, oppressive, malicious, and/or grossly negligent conduct;

    d. A permanent injunction against future acts of discrimination and harassment against Plaintiff by Defendant;

    e. Costs expended herein, including reasonable attorneys' fees;

    f. Pre-judgment and post-judgment interest; and

    g. Any and all other relief to which she may be entitled.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

57. Plaintiff realleges and incorporates herein as if set forth in full, the factual allegations in paragraphs 1 through 45 as if fully set forth herein

58. Throughout the relevant time period, Defendant engaged in unlawful retaliatory practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) by terminating Plaintiff's employment because she opposed discriminatory practices of Defendant and reported those practices her superiors.

59. The effect of the events described above has been to deprive Plaintiff of equal employment opportunities in retaliation for exercising her federally protected rights.

60. The unlawful employment practices described above were intentional.

61. The unlawful employment practices described above were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

**WHEREFORE**, Plaintiff, Nancy Albert, demands judgment against the Defendant, in an amount which will compensate her for:

h. Violation of her rights under Title VII of the Civil Rights Act of 1964 for Defendant's wrongful, discriminatory and retaliatory termination of Plaintiff.

i. Compensatory damages including lost wages, past and future and/or impairment of power to earn money; physical pain, emotional distress and humiliation, past and future; and past and future medical expenses;

j. Punitive damages to punish the Defendant for its willful, wanton, oppressive, malicious, and/or grossly negligent conduct;

k. A permanent injunction against future acts of discrimination and harassment against Plaintiff by Defendant;

l. Costs expended herein, including reasonable attorneys' fees;

m. Pre-judgment and post-judgment interest; and

n. Any and all other relief to which she may be entitled.

## COUNT III
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992

62. Plaintiff realleges and incorporates herein as if set forth in full, the factual allegations in paragraphs 1 through 45 as if fully set forth herein.

63. Plaintiff, because of her sex, is a member of a protected class under the FCRA.

64. By the conduct described above, Defendant discriminated against Plaintiff because of her sex and subjected the Plaintiff to sex-based animosity, including but not limited to terminating Plaintiff because of her sex.

65. Such discrimination was based on Plaintiff's sex in that Plaintiff would not have been subjected to the same unlawful conduct but for the fact that she was a female.

66. As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

67. The conduct of Defendant, by and through the conduct of its supervisors, employees, agents and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued discrimination against the Plaintiff, deprived the Plaintiff of statutory rights.

68. Defendant's unlawful actions were willful, wanton and intentional and were made with malice or reckless indifference to the Plaintiff's statutorily protected rights entitling Plaintiff to damages in the form of compensatory and punitive damages under the FCRA.

69. Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory conduct.

70. Defendant's discriminatory conduct was willful, severe and pervasive and in complete disregard of Plaintiff's protected rights. Defendant, and its supervisory personnel, were aware that discrimination on the basis of Plaintiff's sex was unlawful but acted intentionally or in reckless disregard of the law.

71. At all material times, the employees exhibiting discriminatory conduct, including James Beno and Audrey Wolf, possessed the authority to affect the terms, conditions and privileges of Plaintiff's employment with Defendant.

72. Defendant retained all employees who exhibited discriminatory conduct toward the Plaintiff and did so despite the knowledge of said employees engaging in discriminatory actions.

**WHEREFORE**, Plaintiff, Nancy Albert, demands judgment against the Defendant, in an amount which will compensate her for:

 o. Violation of her rights under Title VII of the Civil Rights Act of 1964 and Section 760.11 of the Florida Civil Rights Act;

 p. Compensatory damages including lost wages, past and future and/or impairment of power to earn money; physical pain, emotional distress and humiliation, past and future; and past and future medical expenses;

 q. Punitive damages to punish the Defendant for its willful, wanton, oppressive, malicious, and/or grossly negligent conduct;

 r. A permanent injunction against future acts of discrimination and harassment against Plaintiff by Defendant;

 s. Costs expended herein, including reasonable attorneys' fees;

 t. Pre-judgment and post-judgment interest; and

 u. Any and all other relief to which she may be entitled.

## JURY TRIAL DEMAND

Plaintiff hereby demands a Jury Trial

Dated: May 2, 2021

            Respectfully submitted,

            **WARD DAMON, PL**
            4420 Beacon Circle
            West Palm Beach, Florida 33407
            Telephone No. (561) 594-1446
            Facsimile No. (561) 842-3626

            By: /s/ Kenneth M. Rehns
            **Kenneth M. Rehns, Esquire**
            Florida Bar No.: 1033557
            Email: krehns@warddamon.com
            Attorneys for Plaintiff